OPINION
Defendant-appellant Gary Cowell appeals from his conviction and sentence for DUI. He contends that the trial court erred by denying his motion to suppress. We agree with the State that the arresting officer had a reasonable and articulable suspicion, based upon the facts then known to him, justifying the officer's request that defendant exit his truck and submit to field sobriety testing. However, we agree with Cowell that the evidence in the record of the suppression hearing, including a videotape of Cowell and the arresting officer at the scene, is insufficient to support a finding of probable cause to believe that Cowell had committed the offense of Driving Under the Influence. Accordingly, the trial court erred when it denied Cowell's motion to suppress evidence obtained following his arrest. The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
A little after 2:00 a.m. on May 1, 2001, Cowell, and the truck he was driving, came to the attention of Englewood police officer Kevin Garlitz. Garlitz first heard "a noise that sounded like a tire squealing against like the edge of a curb." When Garlitz looked up, he saw a truck, being driven by Cowell, come down a hill. It appeared to Garlitz that Cowell was traveling between 50 and 55 m.p.h., in a 35 m.p.h. zone, but Garlitz was unable to get a reading from his laser unit.
Garlitz pulled in behind Cowell, turned on his overhead lights, and stopped him. After the stop, Garlitz walked up to the driver's side of the truck to talk to Cowell. Cowell's interactions with Garlitz, and with a backup police officer who arrived later, is captured on a videotape, which was received in evidence at the suppression hearing. It is not possible, from the videotape, to make out any of the conversation between Cowell and the officers, but the videotape does constitute a clear visual record of what happened from the time Cowell exited his truck until he was arrested.
Garlitz testified that in talking with Cowell he noticed an odor of alcohol, and he saw a can of beer "in the passenger door." Garlitz asked Cowell if he'd been drinking, and Cowell said he had had two or three beers.
Garlitz returned to his cruiser to call for another officer to do field sobriety testing. Cowell then got out of the truck, was told by Garlitz to get back into the truck, and did so.
After a short while, another police officer, "Officer Powers," arrived, and both officers walked up to the driver's side of the truck. Cowell got out of the truck and submitted to three field sobriety tests. These included a horizontal gaze nystagmus test, a one-legged stand, and a heel-to-toe walk. Following the administration of these tests, Cowell was arrested on a charge of DUI. Following his arrest, he submitted to a breath alcohol test.
Cowell moved to suppress the evidence obtained against him. He contended that Officer Garlitz was without a reasonable and articulable suspicion justifying the request that Cowell exit the truck to submit to field sobriety tests, so that all evidence obtained from and after the time that he exited the truck is inadmissible. In the alternative, he contended that there was no probable cause for his arrest, so that all evidence obtained following his arrest, i.e., the breath alcohol test, should be suppressed.
An evidentiary hearing was had before a magistrate on Cowell's motion to suppress. Officer Garlitz testified at the hearing, and the videotape was received in evidence. The magistrate concluded that the State had failed to meet its burden of establishing that the field sobriety tests were performed in accordance with standards and procedures set forth in the National Highway Transportation Safety Administration Manual, so that, pursuant to State v. Homan (2000), 89 Ohio St.3d 421, the field sobriety tests, themselves, were not admissible. Otherwise, however, the magistrate resolved the issues adversely to Cowell. Specifically, she found that Garlitz had a reasonable and articulable suspicion justifying Garlitz's requiring Cowell to exit his truck so that field sobriety tests could be performed, and she held that Garlitz later had probable cause for the arrest.
Cowell objected to the magistrate's decision. In a six-page decision, the trial court applied the law to the facts in evidence at the hearing, and reached the same conclusion that the magistrate had. Specifically, the trial court concluded that the field sobriety tests, themselves, could not be admitted in evidence, since the State had failed to meet its burden of establishing that they were performed in accordance with the NHTSA standards and procedures, but the trial court found that Garlitz had a reasonable and articulable suspicion justifying the request that Cowell exit his truck in order that field sobriety tests could be administered, and that Garlitz subsequently had probable cause for the arrest, so that the motion to suppress all the evidence other than the field sobriety tests, themselves, was overruled.
Following these rulings, Cowell was tried, was found guilty, and was sentenced accordingly. From his conviction and sentence, Cowell appeals.
 II
Although Cowell has not expressly provided assignments of error, he has provided a statement of the issues for review. From the first of these, we infer his First Assignment of Error to be:
 ". . . THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION THAT AN OFFICER WHO OBSERVED DE MINIMUS DRIVING, SMELLED ONLY AN ODOR OF ALCOHOL WITH AN ADMISSION OF 2-3 BEERS BY THE DRIVER, HAD SUFFICIENT CAUSE TO REQUIRE THE INDIVIDUAL TO LEAVE HIS MOTOR VEHICLE AND SUBMIT TO FIELD SOBRIETY TESTS."
It must be remembered that the trial court excluded the field sobriety tests, themselves, from evidence, upon the independent ground that the State failed to prove that they were performed in accordance with NHTSA standards, as required by State v. Homan, supra. Accordingly, the significance of this assignment of error is Cowell's contention that his behavior upon exiting his truck for the purpose of submitting to the field sobriety tests, and thereafter, should have been excluded from evidence. It should also be remembered that he exited his truck on two occasions, and it was only the second time he exited his truck that he did so for the purpose of submitting to field sobriety tests. The first time, he had not been asked by the officer to leave his truck. The State does not argue that, and we do not consider whether, pursuant toPennsylvania v. Mimms (1977), 434 U.S. 106, 98 S.Ct. 330,54 L.Ed.2d 331, Garlitz could properly require Cowell to exit his truck independently of any reasonable basis for administering field sobriety tests. It does appear, from this record, that Cowell was asked to exit his truck solely for the purpose of submitting to field sobriety testing.
Cowell relies upon several recent decisions of this court for the proposition that de minimus traffic violations, combined with a perceived odor of alcohol and a defendant's admission that he has consumed two or three beers, standing alone, is insufficient to require the defendant to submit to field sobriety testing. State v. Spillers (March 24, 2000), Darke App. No. 1504; State v. Segi (August 18, 2000), Montgomery App. No. 18267; and State v. Dixon (December 1, 2000), Greene App. No. 2000-CA-30.
Cowell dismisses as insignificant the additional factor of Garlitz's having heard a noise that sounded like tires hitting a curb. Cowell argues that this is not significant, because Garlitz did not actually see him hit the curb.
We note that this event occurred a little after 2:00 a.m., at a time when traffic is typically light. Garlitz did not indicate, in his testimony, that there were any other vehicles in the vicinity when he heard the noise, looked up, and saw Cowell's truck. We conclude, then, that it is a reasonable inference that Garlitz heard the sound of Cowell's truck hitting the curb. With this additional fact, we conclude that Garlitz had a reasonable and articulable suspicion, sufficient to justify Garlitz in requiring Cowell to submit to field sobriety testing.
Cowell's first assignment of error is overruled.
 III
Cowell's inferred Second Assignment of Error is as follows:
 ". . . THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION THAT AN OFFICER HAD PROBABLE CAUSE TO ARREST A DRIVER WHERE THE OFFICER OBSERVED DE MINIMUS DRIVING, SMELLED AN ODOR OF ALCOHOL WITH AN ADMISSION OF 2-3 BEERS, OBSERVED NOMINAL PROBLEMS ON THE WALKING-THE-LINE TEST, BUT THE DRIVER PASSED THE ONE LEGGED STAND TEST AND ALL OTHER EVIDENCE INDICATED SOBRIETY IS SUFFICIENT TO FIND PROBABLE CAUSE FOR THE APPELLANT'S ARREST."
Again, we note that the trial court excluded from consideration the evidence of the field sobriety tests, themselves, because the State had not satisfied its burden of proving that they were performed in accordance with NHTSA standards, as required by State v. Homan, supra.
Neither did Cowell. Accordingly, we conclude that Cowell's performance on the field sobriety tests is not something that can properly be considered on the issue of probable cause for the arrest, either in the State's favor, or in Cowell's favor. If Cowell's behavior, while performing the test, had exceeded the normal range of test behaviors, i.e., had Cowell fallen down on the ground, passed out, or begun singing Mary Had a LittleLamb in a loud voice, then that behavior might be admissible, since it would constitute evidence of Cowell's behavior, generally, not his performance on the test. We have reviewed the videotape, and we conclude that nothing so remarkable occurred while Cowell was performing the tests.
The evidence perceived by Garlitz before Cowell exited his truck, while sufficient to establish a reasonable and articulable suspicion that Cowell may have committed DUI, falls short of establishing probable cause for an arrest. To rise to the level of probable cause, this evidence must be combined with additional evidence of Cowell's behavior while exiting his truck, and thereafter.
It should be noted that Garlitz, in his testimony narrating his encounter with Cowell, did not refer to any balance problems that Cowell had, other than that he "staggered a few times" while performing the walk-and-turn test. It was only when Garlitz was asked why he had placed Cowell under arrest that Garlitz referred to Cowell's having staggered while exiting his truck:
 "A. Yes. He did pretty decent on the one-leg stand. Then I walked the subject back to the vehicle and placed him under arrest for DUI.
"Q. Okay. And why did you do that?
 "A. Due to the odor of alcohol, visually watching his balance, staggering stepping out of the vehicle, staggering a couple of times during the tests, and the field sobriety tests, especially with the odor of alcohol and everything else and admitting to drinking I went ahead and placed him [sic] arrest for DUI."
In arriving at their respective conclusions, both the magistrate and the trial court relied expressly upon the videotape that was received in evidence. In her decision, for example, the magistrate opined as follows:
 "In determining whether probable cause existed in this case, the Court has considered the following evidence: Officer Garlitz made a visual observation of the Defendant speeding 15 to 20 miles above the posted limit; he had cause to believe that the Defendant's vehicle, while traveling on south Main Street, struck a curb; the Defendant had an odor of alcohol on or about his person; the officer observed a can of beer inside the Defendant's vehicle; the Defendant admitted to having consumed two to three beers that evening; and, the Defendant was observed by the officer to stagger while outside his vehicle, and a tape of the stop shows that as the Defendant exited his vehicle, he needed to use the door for support. (See Joint Exhibit `1'). Under the totality of these circumstances, the Court finds that there is evidence of the consumption of alcohol, as well as physical impairment therefrom, and for these reasons the Court finds sufficient probable cause existed for the Defendant's arrest for Driving Under the Influence."
In its discussion of probable cause, the trial court opined as follows:
 "The officer fell in behind the Defendant and, although the Defendant hit the brakes several times, the officer observed no further traffic violations. A stop of the Defendant was effectuated and when the officer approached the vehicle and spoke with the Defendant driver, the officer detected an odor of an alcoholic beverage and observed a can of beer inside the vehicle. . . . Upon inquiry, the Defendant admitted to having consumed two to three beers. . . . No testimony was elicited on the record characterizing the intensity of the odor detected, i.e. whether it was slight, moderate or strong. The record is also silent as to any testimony of slurred speech, bloodshot eyes, fumbling for a license, or other typical indicia of intoxication, for the time period of the officer's initial contact with the Defendant. However, after speaking with the Defendant the officer took the Defendant's driver's license and returned to his patrol vehicle. (Joint Exhibit `1'). At this juncture, and on his own accord, before the issuance of any speeding citation (Joint Exhibit `1') and before the officer had requested the Defendant to step out of his car to take field sobriety tests . . ., the Defendant exited his vehicle using his car door for support and appearing unsteady on his feet. (Joint Exhibit `1'). This Court finds that this occurred within the first few minutes of the stop, (Joint Exhibit `1'), before the officer had time to fulfill the initial purpose for the stop to wit: a traffic citation or warning. Defendant was instructed to get back into his vehicle, which he did. Thereafter, a backup officer arrived and it was then that the Defendant was requested to take field sobriety tests. Defendant alighted from his vehicle a second time, losing his balance as he did so, thereafter the field sobriety tests were administered. (Joint Exhibit `1')." (Emphasis added.)
Later, in addressing the issue of probable cause, the trial court opined as follows:
 "First, this Court concurs with the Magistrate's finding that, having failed to strictly comply with the standards and procedures set forth in the National Highway Safety Administration Manual (NTSA) the results of any field sobriety tests administered should not be considered for purposes of probable cause. State v. Homan (2000), 89 Ohio St.3d 421. When the Defendant was asked to exit his vehicle to take the field sobriety tests, the officer observed the Defendant lose his balance. This is depicted in Joint Exhibit `1' which also shows the Defendant swaying as he is being addressed by Officer Garlitz. . . .
 ". . . In the case at bar, evidence of the Defendant's unsteadiness on his feet, swaying, loss of balance and use of the car door for support, all supply, in this Court's opinion, such reliable indicia as to distinguish this case from [State v.] Segi [, supra]." (Emphasis added.)
We have reviewed the record. Other than Officer Garlitz's testimony that Cowell "staggered a few times" during the walk-and-turn test, which the trial court properly excluded from consideration, the only reference by Garlitz to any problems that Cowell had with balance came in his answer to the question why Garlitz placed Cowell under arrest: "Due to the odor of alcohol, visually watching his balance, staggering stepping out of the vehicle, staggering a couple of times during the tests, and the field sobriety tests, especially with the odor of alcohol and everything else and admitted to drinking I went ahead and placed him [sic] arrest for DUI." At no time did Officer Garlitz testify that Cowell lost his balance, or that he needed to hold on to the truck door to maintain his balance.
Of course, both the magistrate and the trial court indicated that they were not relying exclusively upon Officer Garlitz's testimony concerning the difficulty Cowell had maintaining his balance, but were also relying upon their review of the videotape, Joint Exhibit 1. In fact, it is obvious from the quoted portions of both opinions that both the trial court and the magistrate relied heavily upon the videotape. That videotape is in our record, and we have watched it. We have not reached the same conclusions from watching the tape.
The videotape shows Cowell exiting his truck twice. The first time, he evidently was not asked to do so, was told to get back in his truck, and did so. The second time was after the second officer arrived at the scene. The videotape captures a visual record of everything that transpired from Cowell's first exiting from his truck until his arrest, following the field sobriety testing.
Just after Cowell alights from the truck for the first time, he can be seen stumbling slightly. We would characterize that stumble as very slight, and see no indication that he was in any danger of losing his balance and falling. Indeed, the slight stumble was suggestive of the difficulty a person may ordinarily have in alighting from a vehicle after being behind the wheel for some time. Furthermore, we note that upon the ground immediately outside the driver's door of the truck, even the police officer stumbled slightly, upon at least one occasion. Indeed, it appears that the first attempt to administer the one-leg stand was terminated, and the two officers and Cowell all moved to a slightly different location, where the ground may have been more level.
Upon evidently being told to get back in his truck, Cowell turned, opened the door of his truck, and got in. He used only his left hand to open the truck door, his right arm remaining at his side. He appears to be leaning into the truck door while opening it, but we do not see anything on the tape indicating that he was having to hold onto the truck door to keep from falling. Also, it should be noted that Officer Garlitz, who was on the scene, did not indicate in his testimony anything about Cowell having had to hold onto the truck door for support.
About a minute and a half later, the second officer having arrived on the scene, and both officers approaching the driver's side of the truck, Cowell exits the truck a second time. We see no indication of staggering or stumbling, of any kind, upon Cowell's second exit from his truck. Shortly after alighting from the truck, Cowell raised both his forearms, while keeping his elbows at his side, and raised both his hands, palms facing the officers. This is a characteristic gesture that is seen repeatedly throughout the tape. Nothing on the videotape leads us to conclude that this gesture had anything to do with Cowell's maintaining his balance. To the contrary, it appears to be a characteristic gesture that Cowell used while communicating with, and interacting with, the police officers.
Next, the horizontal gaze nystagmus test is administered. Then, Cowell starts to perform the one-leg stand, but both he and the officer administering the test are having some difficulty maintaining their balance, and it appears that all three men move to a slightly different location, where perhaps the ground is more level. Cowell then performs the one-leg stand. Cowell then performs the heel-to-toe walk. He appears to have no difficulty walking in one direction, but is a little wobbly on his return. He is then arrested.
In our review of the videotape, we do not suffer from the same disadvantage that appellate courts often suffer in considering evidence. When evidence is in the form of testimony, the finder of fact is at an advantage, having seen and heard the witnesses testify. With respect to the videotape, however, both we and the trial court have had exactly the same perceptual experience.
The trial court's conclusions concerning Cowell's motor impairment, specifically, the difficulty he had maintaining his balance, depend heavily upon the videotape. Many of those conclusions cannot be supported from Garlitz's testimony. Garlitz never testified that Cowell had to hang on to the truck door to support himself, for example. Garlitz only testified that Cowell staggered stepping out of the vehicle, without any elaboration.
In short, based upon our review of the videotape, Joint Exhibit 1, we conclude that there is insufficient evidence in the record to support the trial court's conclusion that Garlitz observed evidence of Cowell's motor impairment, specifically difficulty maintaining his balance, of sufficient magnitude to suggest that Cowell was under the influence of alcohol. Without this evidence, Garlitz lacked probable cause to arrest Cowell. State v. Segi, supra. In reaching this conclusion, we note that Garlitz admitted that motorists frequently speed coming down the hill where Cowell was speeding. Furthermore, there was testimony that the speed at which a vehicle is being operated, other than slow speeds of 10 m.p.h. or less, does not correlate with the operation of a motor vehicle while under the influence of alcohol.
Cowell's Second Assignment of Error is sustained.
 IV
Cowell's breath alcohol test was 0.248. This is a high level of intoxication, and it is remarkable that Cowell was able to walk at all while intoxicated to such a degree. If the State had met its burden of proving that the field sobriety tests were conducted in accordance with NHTSA standards, the horizontal gaze nystagmus test result, alone, would have justified Cowell's arrest, and the administration of a breath alcohol test.
Cowell is fortunate to have escaped legal liability for his reckless conduct on the night of May 1, 2001. But beyond the legal peril to which he exposed himself by driving while intoxicated to a great degree, he subjected both himself and others on the road that night to a great risk of a physical catastrophe with fatal consequences.
The judges of this court have all taken an oath to follow the law, and we believe we are doing that in this case. But we are all also human. We hope that Cowell will learn from this experience, and will never again subject himself, and others, to the grave peril represented by driving while intoxicated.
 V
Cowell's second assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and GRADY, JJ., concur.